**In the Matter of Jesse GARRETT, Jr.**

No. 49A02–9306–JV–290.[1]

Court of Appeals of Indiana,
First District.

March 22, 1994.

Transfer Denied Aug. 18, 1994.

Pamela Carter, Atty. Gen., Victoria M. Ransberger, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant.

Michael A. Fleener, Child Advocate, Inc., Jeffrey D. Claflin, Plews & Shadley, Indianapolis, for appellee.

---

1. This case was diverted to this office on February 14, 1994 by direction of the Chief Judge.

BAKER, Judge.

May a juvenile court order a juvenile delinquent a ward of the Indiana Department of Mental Health (DMH) and make the DMH financially responsible for the costs of the juvenile's mental health services? The State of Indiana impugns the trial court's decision ordering appellee-defendant Jesse Garrett, Jr. a ward of DMH and ordering DMH to pay the costs of the mental health services.

### FACTS

Sixteen-year-old Garrett has a history of mental illness and delinquency. In 1991, Garrett's parents voluntarily committed him to LaRue Carter Hospital for mental health services where he was treated with various drugs. In November 1992, during a temporary leave from LaRue, Garrett was involved in a domestic disturbance in his home. Garrett's parents filed charges of criminal mischief and battery against him on November 27, 1992. On December 1, 1992, the criminal mischief charge was dismissed, but Garrett was adjudicated a delinquent on the battery charge. On December 16, 1992, Garrett was released to his parent's custody pending disposition of his case. Thereafter, Child Advocates, Inc., was appointed as Garrett's guardian ad litem and DMH was joined in the delinquency proceedings. Experiencing continuing problems, Garrett was admitted to Charter Hospital on April 28, 1993.

On May 13, 1993, at the dispositional hearing held pursuant to IND.CODE 31–6–4–15.3, the juvenile court ordered that Garrett become a ward of DMH for placement in an appropriate care facility with cost of placement to be paid by DMH. The court further ordered DMH to file a report within ten days recommending appropriate placement of Garrett. Meanwhile, Garrett was returned to Charter Hospital. On May 17, 1993, the court clarified its prior order and instructed the probation department to investigate placement of Garrett.

At the June 16, 1993 hearing, the juvenile court placed Garrett at Valle Vista Hospital while reaffirming its order that Garrett was a ward of DMH that was financially responsible for the expenses incurred at Charter Hospital during the pendency of Garrett's placement at Valle Vista Hospital, as well as the anticipated costs at Valle Vista.

### DISCUSSION AND DECISION

DMH questions the juvenile court's authority to award wardship to DMH and to assign costs to DMH. The exclusive means for court-ordered wardship of a delinquent is set forth in IND.CODE 31–6–4–15.9 (Supp. 1993). *See In the Matter of Tina T.* (1991), Ind., 579 N.E.2d 48, 58, n. 7 (juvenile courts are bound to choose among dispositional alternatives set out in the code). DMH argues that the trial court did not follow this statute limiting court-ordered wardship to the department of corrections or a community-based correctional facility for children. *See* I.C. 31–6–4–15.9(a)(1).[2]

■■■ As Garrett correctly observes, I.C. 31–6–4–15.9(a)(5) also authorizes award of wardship to any person or shelter care facility.[3] Garrett contends that the wardship to DMH is proper because IND.CODE 31–6–1–2 (Supp.1993) defines person to include a governmental entity. Although "person" in other sections of the juvenile law statute may include a governmental entity such as DMH, we find that applying such meaning in I.C. 31–6–4–15.9(a)(5) is inconsistent with I.C. 31–6–4–15.9(a)(1), which restricts award of wardship to a particular governmental agency, namely the department of corrections. Where two statutory provisions conflict, the more specific one controls. *See Appeal of Wickersham* (1992), Ind.App., 594 N.E.2d 498, 501. Thus, the juvenile court erred in awarding wardship to DMH, and we remand for the court to enter disposition under I.C. 31–6–4–15.9.

---

**2.** I.C. 31–6–4–15.9(a)(1) reads:

> If the child is a delinquent child under section 1(b)(1) of this chapter, the juvenile court may enter any dispositional decree specified in subsection (b) and may take any of the following actions:

> (1) Award wardship either to the department of correction for housing in any correctional facility for children or to any community based correctional facility for children....

**3.** I.C. 31–6–4–15.9(a)(5) provides: Award wardship to any person or shelter care facility....

 Because the remaining issues may recur on remand, we address them. The parties dispute whether the juvenile court may in its sole discretion place Garrett in a restrictive facility. In order to remove a delinquent from his home and place him in a restrictive facility, IND.CODE 31–6–14–6 (Supp.1993) requires that a local coordinating committee (LCC) review the restrictive placement a juvenile court proposes. The LCC considers alternative placements and makes a nonbinding recommendation of placement to the juvenile court. I.C. 31–6–14–11. The juvenile court is obligated to consider an LCC's recommendation, but the LCC has no decisionmaking power. *Tina T.,* at 60.

 Next, the parties disagree as to whom is responsible for the costs of any services ordered by the juvenile court. As this district noted in two cases decided on the same day, DMH is not responsible for mental health costs in involuntary commitment cases. *See In re Commitment of T.J.* (1993), Ind.App., 614 N.E.2d 559; *In re Commitment of A.N.B.* (1993), Ind.App., 614 N.E.2d 563. Similarly, in delinquency cases, DMH is not the responsible party for mental health costs of juveniles. IND.CODE 31–6–4–18(a) (Supp.1993) directs that the costs of services be paid by the county. However, a delinquent child's parents are financially responsible for any services ordered by the court and must reimburse the county unless the court determines that they are unable to pay for them, payment would be an unreasonable hardship on the family, or justice would not be served. I.C. 31–6–4–18(b). Accordingly, we reverse the trial court's order that DMH pay the costs of Garrett's mental health services.

Judgment reversed and remanded for further proceedings not inconsistent with this opinion.

NAJAM and HOFFMAN, JJ., concur.