BRADFORD, Judge,
dissenting.
First, I would accept Boonville’s argument that the question of how the State-owned parcels should be counted has been waived. Second, I would conclude that the parcels owned by the State should be treated no differently than any other parcel for purposes of the 65% rule of the remonstrance statute. Consequently, I respectfully dissent.
I. Waiver
I would not address the Landowners’ argument regarding how the State-owned parcels should be treated because it was not raised before the first appeal. “The law is well-established that an issue is waived if it was available on the first appeal but was not presented.” Citizens Action Coal, of Ind., Inc. v. N. Ind. Pub. Serv. Co., 582 N.E.2d 887, 391 (Ind.Ct.App. 1991). The Landowners point out that the precise question at issue in this appeal was not available in the first appeal in this case because it had not been litigated yet in the trial court. While this is true, in my view it is beside the point. The Landowners do not offer any explanation for their failure to raise this issue before the first appeal, and now its litigation has given rise to another appeal. “A case cannot be strung out indefinitely by bringing one issue after another before a court in piecemeal fashion at the option and with the delays which a [party] may see fit to use.” Callahan v. State, 247 Ind. 350, 356, 214 N.E.2d 648, 652 (1966). “Judicial procedure would have no orderliness, but in fact, it would be chaotic if we were to recognize the contention that a party is not bound to use diligence and act promptly in presenting his side of a law suit.” Id. Although there is no reason to believe that the Landowners are attempting to “string out” this case, I am concerned that allowing this claim to proceed will encourage such behavior in the future.
II. How the State-Owned Parcels Should be Counted
Moreover, if I were to reach the merits of the Landowners’ claim, I would con- *27 elude that all of the State-owned parcels should be counted individually for purposes of the 65% rule. The remonstrance process is purely statutory, and, as such, is governed by the rules of statutory interpretation. “The interpretation of a statute is a question of law reserved for the courts.” Scott v. Irmeger, 859 N.E.2d 1238,1239 (Ind.Ct.App.2007).
A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute’s underlying policy and goals. Rupert v. State, 717 N.E.2d 1209, 1210 (Ind.Ct.App. 1999).
Fuller v. State, 752 N.E.2d 235, 237-38 (Ind.Ct.App.2001).
In my view, the Indiana Supreme Court’s 2000 holding in Arnold, which interpreted the remonstrance statute and adopted a “ ‘one-parcel-one-vote’ ” regime, controls. The Landowners argue that a distinction between “land” and “public highways” can be inferred from the annexation statutes, from which it can further be inferred that the exclusion of the term “public highway” from the remonstrance statute indicates that it should be only counted as one parcel. First, the statutes in question certainly make no clear distinction between “land” and “public highways,” most importantly by failing to define “land” as anything other than all land. Quite simply, “public highway” is a subset of “land” — not a different concept. The most reasonable reading of the remonstrance statute is therefore that all land is to the treated the same for purposes of the 65% rule. “ ‘It is the function of this court to ascertain and implement the legislature’s intent and the legislature’s intent must be primarily determined by giving effect to the ordinary and plain meaning of the language used in the statute.’ ” Henricks v. Fletcher Chrysler Prods., Inc., 570 N.E.2d 115,116 (Ind.Ct.App.1991) (quoting Irmscher v. McCue, 504 N.E.2d 1034, 1036 (Ind.Ct.App.1987)), trans. denied. The General Assembly has had twelve years to alter the Indiana Supreme Court’s “one-parcel-one-vote” interpretation, which I take as strong support for the proposition that it represents legislative intent. “[I]t is well-established that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly’s acquiescence and agreement with the judicial interpretation.” Fraley v. Minger, 829 N.E.2d 476, 492 (Ind.2005). In any event, if we were to accept the Landowners’ argument that “land” and “public highway” are two different concepts, it would follow that the State-owned land would not be counted at all, not that it would be counted once, as the Landowners assert. Absent explicit language to that effect that “land” and “public highway” are to be counted differently, I would conclude that we remain bound by Arnold.
The Landowners also argue that individually counting the State-owned parcels that make up Highway 62 distorts the remonstrance process in this case and “might make an effective remonstrance literally impossible” in other cases. Appellant’s Reply Br. at 5. While I agree that counting the State-owned parcels individu *28 ally might make it more difficult, or even impossible,- to reach the 65% threshold, I cannot conclude that the process is “distorted.” After all, the statutory framework itself clearly contemplates that opponents of annexation may be thwarted by other landowners who either desire annexation or simply do not care. Por example, very few, if any, would consider the remonstrance process distorted where the owner of many- rental properties in a tract of land desires annexation and refuses to support remonstrance. The General Assembly has provided a process for challenging annexation, and if we conclude that the process is distorted in this case simply because it does not seem that the Landowners will be able to remonstrate, I have a difficult time seeing how we could avoid reaching-the same conclusion in any case where the challengers are unable to reach the statutory thresholds.[5]
I respectfully dissent.